NONANTUM WORSTED COMPANY *vs.* NORTH ADAMS MANU-
FACTURING COMPANY.

Middlesex.   March 8, 1892. — May 9, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Sale — Deduction from Weight — Custom — Evidence.*

In an action for the price of worsted yarn, it appeared that the yarn was sold by the pound, wound upon paper tubes, and sent to the defendant packed in cases; that the plaintiff sent to the defendant bills expressed to be for so many cases, lot such a number, so many pounds "net," at a certain rate; and the question was whether the plaintiff was entitled to count the weight of the tubes in making up the number of pounds for which it was to be paid.   While the plaintiff offered evidence outside the bill of parcels to prove the real terms of the bargain, the word "net" was found to have been understood to indicate that

there was to be no deduction from the weight charged in the bill. *Held,* that the court had a right to refuse rulings requested by the defendant based on the hypothesis that the sale was a sale of yarn simply, since that was the question between the parties, and the court found the fact in favor of the plaintiff.

Where, in an action for the price of merchandise, a witness testified that the plaintiff did not treat the defendant differently from its other customers with respect to price and allowance for tare, it was *held* that this only meant that the plaintiff dealt with the defendant according to its custom, which it said the defendant knew, with perhaps an implied denial of fraud or concealment.

Where, in an action for the price of merchandise, a letter sent as an order therefor to the plaintiff by the plaintiff's agent after the conclusion of a bargain by the latter with the defendant, was put in evidence to fortify the agent's account of the bargain, which account was contradicted by the defendant, it was *held* that its admission was made immaterial by the statement of the presiding justice that he did not accept that account as proved.

CONTRACT, on an account annexed. The declaration contained a claim for various lots of worsted yarn delivered in September, 1886, each lot containing. a certain number of pounds, at a certain price per pound.

The answer was a general denial, and a declaration in set-off, the declaration in set-off containing a claim for overcharge of twelve per cent in the weight of the yarns on sundry bills previously paid by the defendant to the plaintiff in 1884, 1885, and 1886, not including, however, any of the bills set out in the declaration.

At the trial in the Superior Court, without a jury, before *Bond,* J., it appeared that the plaintiff was a manufacturer and seller of worsted yarn, and that the defendant had at various times in 1884, 1885, and 1886 purchased of the plaintiff, by the pound, worsted yarn wound upon paper tubes, and sent to the defendant packed in cases, and that the plaintiff rendered bills for the same ; that from a copy of the first of these bills it appeared that the word " net " was written after the number of pounds charged for, and that all subsequent bills were similar, with the exceptions hereinafter set forth; that the weight of the paper tubes formed twelve per cent of the gross amount of the goods delivered ; that the actual amount of yarn formed eighty-eight per cent of the amount of goods delivered and billed by the plaintiff during this time, including the amount sued for in this action. The bills for the goods delivered to the defendant by the plaintiff, almost without exception, contained after the number of pounds the word "net." All the bills for the first year

contained it, and Hall, treasurer of the plaintiff company, said whenever omitted it was an oversight.

The plaintiff introduced evidence tending to show that in some cases it made special contracts to make a deduction on account of the weight of the paper tubes, and in such cases the deduction was shown on its bills. It was not claimed that any contract for such deduction had been made with the defendant. The plaintiff also introduced evidence, that, except in such special cases, it was its uniform custom to charge purchasers of yarn for the weight of the paper tubes, and to bill the entire weight of the paper tubes and yarn as the net weight of the goods purchased; that if a sale was made, and nothing said about an allowance for tubes, no allowance would be made; that the plaintiff had never allowed a tare of twelve per cent; that it never allowed tare except on large orders of over five hundred pounds each; that the highest tare it ever allowed by special contract was nine per cent; and that the plaintiff followed the usual course of its business in dealing with the defendant. This evidence was uncontradicted. The plaintiff introduced further evidence that the defendant was informed of this custom by the plaintiff, and knew that the weight charged for included weight of paper tubes, and that there was no allowance for tare of tubes; and also that its custom was the uniform and well known custom of the market.

The defendant denied that it had been informed or knew of the plaintiff's custom as above alleged, and denied that there was any such uniform and universal custom in the worsted yarn market; and further claimed, on the contrary, and introduced evidence to show, that the uniform and universal custom of the market was to deduct from the gross weight of all yarns the weight of the substance upon which they were wound; and further contended that, even if the plaintiff's custom and the universal custom of the market were as claimed by the plaintiff, the bills of the goods sold by the plaintiff to the defendant, which bills were made out by the plaintiff and sent to the defendant, constituted written contracts which could not be varied by oral testimony, and inasmuch as the parties bought and sold worsted yarn by the net pound, the defendant was entitled to receive net pounds of worsted yarn, and that it therefore was entitled

to set off against the bill claimed by the plaintiff the amount of the overcharges as set forth in the declaration in set-off.

It was agreed that the declaration contained the correct combined weight of the tubes and yarn in the lots delivered on the various dates as set forth, and that the declaration in set-off also showed the correct combined weight of such tubes and yarn in the lots previously delivered to the defendant, and the correct amount of money paid by the defendant therefor; and that eighty-eight per cent of the weights charged for by the plaintiff and paid for by the defendant was the weight of yarn, the remaining twelve per cent being the weight of the paper tubes.

It appeared that the first sale of goods by the plaintiff to the defendant was made by one Solis, agent of the plaintiff, about January 1, 1884, at North Adams; and the defendant introduced evidence that Solis made an offer, which the defendant accepted, to sell yarn at so much per pound, and that he said nothing about including the weight of the paper tubes in the weight to be paid for. Solis testified that he specified, in making the offer, that there would be no allowance for tare. None of the correspondence of the parties contained any allusion to tare until after the last purchase, and contained no statement in reference to the question at issue of charging or deducting the weight of the paper tubes; and the defendant's agents who transacted the business all testified that they understood when they paid the bills that the weights charged and paid for were the net weights of the yarn only, and did not include the weight of the paper tubes, and they did not understand there was anything further to be deducted. The plaintiff introduced evidence tending to contradict this testimony.

The defendant admitted paying, on October 20, 1886, a set of bills rendered for goods delivered in August, 1886, to the amount of about three hundred dollars, after it had ascertained that there had been no allowance for tare; the defendant's treasurer testified that, when this payment was made, he believed that by the payment of this sum he would still retain in his hands the amount of the claim of the defendant against the plaintiff for overcharges, the amount retained being between five and six hundred dollars.

The purchases and sales not made by letter were made by the

defendant's leaving an oral order with the plaintiff, and by the plaintiff's shipping the goods to North Adams, after which bills were sent in the usual form.

Over eighty per cent of the bills so sent by the Nonantum Worsted Company to the North Adams Manufacturing Company were bills for pounds of worsted yarn, in the form of the first named bill, and there were but few bills ever sent to the defendant company by the plaintiff which did not contain, after the number of pounds charged for on the bill, the word "net." The total number of bills sent to the defendant by the plaintiff was eighty-eight; the word "net" appeared in seventy-three of them.

A witness called by the plaintiff testified upon cross-examination as follows :

"Q. When you were buying foreign goods, did you understand you were paying for paper? A. Yes, sir; I did.

"Q. Were the goods billed net? A. I don't know; but it would be the proper way.

"Q. Do you think it would be proper if 100 lbs. of yarn were sold you without allowance for tare, to bill it net? A. Certainly, just the same, as well as cops; it is in the same line of business, just the same.

"Q. To bill it net you think would be proper, — that would not mean the weight of the cops was deducted? A. No; it would mean the amount I was paying for, — the amount coming in, more or less, since I was in it.

"Q. You would not understand it to mean that there were 100 lbs. of yarn? A. Oh, no; not at all."

Against the defendant's objection, the plaintiff was allowed to introduce in evidence a letter written by Solis to Hall, treasurer of the plaintiff company, which letter was dated Pittsfield, Mass., February 9, 1886, containing a statement by said Solis that he had previously seen representatives of the defendant company at North Adams, and had sold them a certain lot of yarn "no tare." There was no evidence, and it was not contended, that any officer or agent of the defendant ever had any knowledge of this letter. Hall, for the plaintiff, testified that the terms on which the plaintiff contracted with the North Adams Manufacturing Company for the sale of these goods was reported to him by means of this

letter from Solis. Solis testified that, at about the time of the writing of this letter, he called on the defendant and took an order for the goods; that he sold it 100 lbs. 5884 brown 1-40s and 100 lbs. 1-40s white ex., no tare allowed, which latter testimony was contradicted by the defendant, and sent that letter to his company, as the order for the goods, from Pittsfield; that his other orders he communicated verbally to the plaintiff; that the plaintiff had no other means of knowing the terms of the order, and getting it on the books, except this letter of February 9.

Hall was allowed, against the defendant's objection, to testify that his company did not treat the North Adams Manufacturing Company differently from the way in which it treated its other customers with respect to price and allowance for tare.

The defendant requested the court to rule as follows:

"1. That in a sale of yarn at a price fixed by the pound, the weight of the tubes, cops, or paper on which the yarn is wound when delivered is not included in the weight to be paid for, unless it is shown that the parties agreed that the weight of such cops or papers is to be included in the weight of yarn to be paid for, or that by uniform and universal usage of the trade the same is so included when no agreement has been made about it by the parties.

"2. That, upon the evidence in the case, the transactions between the parties were purchases and sales at a price fixed by the net pound.

"3. That in a sale of yarn at a price fixed by the net pound, the weight of the tubes, cops, or paper on which the yarn is wound when delivered is not included in the weight to be paid for, unless it is shown that the parties agreed that the weight of such cops or paper is to be included in the weight of yarn to be paid for, or that by uniform and universal usage of the trade the same is so included when no agreement has been made about it by the parties."

The court refused to rule as requested, found for the plaintiff for the amount claimed in the declaration, disallowed the set-off, and made the following findings of fact:

" The plaintiff's course of business on this line of goods has always been to weigh both yarn and paper tubes, and to charge

the purchaser for the weight of both, sending a bill for the same as ' net,' unless there was, by special agreement, an allowance which was specified in the bill.   The plaintiff followed its usual course of business in the transactions with the defendant.

" There was no fraud on the part of the plaintiff in its dealings with the defendant, and there was no custom in the trade which would affect the transactions between the plaintiff and defendant in regard to charging or deducting the weight of the paper tubes.

" While the plaintiff understood that all its sales to the defendant were without any allowance for tare on account of the weight of the paper tubes upon which the yarn was wound being included in the bill, I do not feel satisfied, upon the evidence, ' that the defendant was told by the plaintiff's salesman, at the time the order was given for the goods, that there was to be no allowance for tare.

" I do not think the defendant was deceived by the word ' net ' in the bill, and on account of the use of this word in the bill believed that the weight of the paper tubes had been deducted, or that the bill was for the weight of yarn alone.   I think the word ' net ' was used by the plaintiff to indicate that there was to be no deduction from the weight so charged in the bill, and that the defendant so understood the use of the word at the time of the receipt of all the goods and of all the bills for the same, and which they paid, and which are set out in the defendant's declaration in set-off, and that the defendant so understood at the time of the receipt of the goods and bills for the same set out in the plaintiff's declaration."

To the admissions of evidence and refusals to rule, as above set forth, the defendant alleged exceptions.

*W. A. Gaston & L. S. Dabney,* for the defendant.

*S. Hoar,* for the plaintiff.

HOLMES, J.   This is an action for the price of worsted yarn. The yarn was sold by the pound, wound upon paper tubes called cops, and was sent to the defendant packed in cases.   The plaintiff sent to the defendant bills expressed to be for so many cases, lot such a number, so many pounds " net " at a certain rate. The only question at the trial was whether the plaintiff was entitled to count the weight of the paper tubes in making up the

number of pounds for which it was to be paid. The defendant said that it bought yarn, and was not bound to pay for anything else, while the plaintiff maintained that the sale was of yarn on cops, and that the cops went to make up the pound like the bones of a chicken. Either transaction was possible, and a finding either way would have been warranted by the evidence. Even if the bills of parcels had not left it open to the plaintiff to prove the real terms of the bargain by other evidence, the word " net " is found to have been used and understood to indicate merely that there was to be no deduction from the weight charged in the bill. To put it another way, the word " net " might be used to exclude the cases only, as well as to exclude the cops, and the weights charged for would have been found to exclude the cases, if the goods had been weighed.

It follows from what we have said that the court had a right to refuse rulings based, as the three requested by the defendant were, on the hypothesis that the sale was a sale of yarn simply, since that was the very question between the parties, and the court found the fact in favor of the plaintiff.

The plaintiff put in evidence that it was its custom, except in some cases of special contract, to charge purchasers for the weight of the paper tubes, and that the defendant was informed of this custom, and knew that there was no allowance for tare of tubes. An exception was taken to permitting a witness to testify that the plaintiff did not treat the defendant differently from its other customers with respect to price and allowance for tare. But this only meant that the plaintiff dealt with the defendant according to its custom, which it said the defendant knew, with perhaps an implied denial of fraud or concealment.

Two of the sales were made by one Solis, who testified that by the terms of the bargain no tare was allowed, and that after one of them he sent a letter to the plaintiff as the order for the goods. This letter was put in, subject to the defendant's exception, and stated the sale with the words " no tare." Of course this was intended to fortify Solis's account of the bargain, which was contradicted by the defendant. It is enough to say that the admission of the evidence is made immaterial by the judge's statement that he did not accept that account as proved.

*Exceptions overruled.*